IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

07-161

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: 07-XXXX (xxx) |
| | : | |
| v. | : | |
| | : | MAG. NO.: |
| ANDREA MYLES, | : | |
| | : | |
| | : | 18 U.S.C. § 1344 |
| Defendant. | : | (Bank Fraud) |

FILED
JUL 0 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant ANDREA MYLES, a.k.a, Andrea Riley, agrees and stipulates that were the Government to go to trial in the above-captioned case, the Government would prove the following facts beyond a reasonable doubt:

The law firm of Alvord and Alvord (hereinafter, "Alvord & Alvord") was created in 1932 by the grandfather and father of Robert W. Alvord ("Mr. Alvord"), who joined the firm in 1958. At all times relevant to the charges in this case, Alvord & Alvord has been located in the District of Columbia, and Mr. Alvord has been a partner at the firm. Additionally, in the late 1930s, Mr. Alvord's father established the Alvord Foundation, which received money from Mr. Alvord's father and later from Mr. Alvord, for the purpose of making charitable contributions to the community. After Mr. Alvord's father passed away in 1964, Mr. Alvord served as a trustee for the Alvord Foundation and continued its legacy of making charitable contributions to the community. At all relevant times, Alvord & Alvord and the Alvord Foundation maintained separate bank accounts with Bank of America. At all relevant times, Bank of America was a financial institution insured by the Federal Deposit Insurance Corporation.

In 1999, Mr. Alvord underwent two surgeries for cancer, and then underwent chemotherapy treatment from on or about February 2000, through July 2000. During that time, Mr. Alvord was in need of an employee or employees to replace his bookkeeper and secretary, both of whom had left or were in the process of leaving his firm, leaving him with a temporary employee to manage the firm's daily operations. On or about the summer of 2000, Mr. Alvord hired defendant ANDREA MYLES, a.k.a. Andrea Riley, to fill both positions. At all relevant times, ANDREA MYLES' duties at Alvord & Alvord included but were not limited to answering all telephone calls received by the firm, scheduling appointments for Mr. Alvord, operating the firm's computer system, reviewing and paying bills to the firm's creditors, maintaining the firm's accounting books and records, paying her salary, and completing and filing federal and state tax forms on behalf of the firm, including the withholding of funds from her salary for the payment of her taxes. At all relevant times, ANDREA MYLES was also responsible for overseeing the Alvord Foundation's books and records, and had access to account information and statements from Bank of America pertaining to the Alvord Foundation.

From on or about January 2001 through May 2002, pursuant to her duties as Alvord & Alvord's bookkeeper, ANDREA MYLES completed and filed all of the firm's Internal Revenue Service Form 941 quarterly federal tax returns on behalf of Alvord & Alvord. As indicated by the forms, ANDREA MYLES' salary for the year 2001 was approximately $38,240.

On or about June 2002, defendant ANDREA MYLES knowingly and willfully devised a scheme and artifice to embezzle money from Alvord & Alvord and the Alvord Foundation, including by defrauding Bank of America and M&T Bank of funds entrusted to their custody and care by Alvord & Alvord and the Alvord Foundation, and to convert the money for

her own use. For the purpose of executing and carrying out the aforementioned scheme and artifice, ANDREA MYLES did as follows:

On or about June 25, 2002, ANDREA MYLES obtained from Bank of America a debit card issued in her name on the Alvord Foundation's Bank of America account. The debit card was mailed from Bank of America's office located in Charlotte, North Carolina, to Alvord & Alvord's office, where ANDREA MYLES received the card. ANDREA MYLES obtained additional debit cards on the Alvord Foundation's Bank of America account on or about January 22, 2004, and on or about September 15, 2005 (collectively, the "Alvord Foundation debit cards"). At no point was ANDREA MYLES a signatory on the Alvord Foundation's account, and at no point was she authorized by the Alvord Foundation or Mr. Alvord to obtain the Alvord Foundation debit cards. From on or about June 2002, through on or about February 2006, ANDREA MYLES made charges on the Alvord Foundation debit cards, without authorization from the Alvord Foundation or Mr. Alvord, to obtain cash, goods and services for her own personal use. The amount of charges made by ANDREA MYLES and honored by Bank of America on the Alvord Foundation debit cards during the aforementioned period amounted to approximately $114,049.65.

In addition, as part of the operating procedures at Alvord & Alvord, ANDREA MYLES would often approach Mr. Alvord with blank checks and request his signature for the stated purpose of paying Alvord & Alvord's bills. Mr. Alvord signed the blank checks and provide them to ANDREA MYLES with the expectation that she would complete them for the stated purpose of paying the firm's creditors. In the years 2003, 2004 and 2005, ANDREA

MYLES' legitimate salary from Alvord & Alvord was approximately $42,617.60, $47,611.84 and $53,507.58, respectively.

From on or about January 2003 through December 2005, for purpose of executing and carrying out the aforementioned scheme and artifice, ANDREA MYLES fraudulently completed some of the blank checks that Mr. Alvord had signed and made them payable either to herself, or to third party vendors for the purpose of obtaining goods or services for her own personal use. The checks made payable to third parties for her benefit from Alvord & Alvord's Bank of America accounts totaled approximately $12,736.09. The checks ANDREA MYLES made payable to herself from Alvord & Alvord's Bank of America accounts totaled approximately $341,194.34, and were either cashed by her or deposited into her own personal bank account. In addition, ANDREA MYLES fraudulently completed checks signed by Mr. Alvord from Alvord & Alvord's account with M&T Bank, and cashed or deposited the checks into her own personal bank account for her own use. The checks from Alvord & Alvord's M&T Bank account totaled approximately $6,800.00. All of the checks fraudulently completed by ANDREA MYLES were honored by Bank of America and M&T Bank respectively.

For purpose of executing and carrying out the aforementioned scheme and artifice, ANDREA MYLES also fraudulently obtained debit cards from Bank of America on Alvord & Alvord's accounts. At no point was ANDREA MYLES a signatory on Alvord & Alvord's Bank of America accounts, and at no point was she authorized by the Alvord & Alvord or Mr. Alvord to obtain a debit card in connection with Alvord & Alvord's Bank of America accounts. From on or about January 2004, through on or about December 2005, ANDREA MYLES made charges with the debit cards on Alvord & Alvord's Bank of America accounts, for

her own personal use without authorization from Alvord & Alvord or Mr. Alvord. The amount of charges made by ANDREA MYLES and honored by Bank of America on Alvord & Alvord's accounts during the aforementioned period amounted to approximately $11,247.40.

During the course of her employment at Alvord & Alvord, ANDREA MYLES would, at various times, briefly review bank statements with Mr. Alvord. ANDREA MYLES obtained the relevant bank statements in electronic format by email and was able to edit the bank statements in order to conceal the aforementioned fraudulent scheme.

In approximately the late fall of 2005, Mr. Alvord observed several checks at Alvord & Alvord's office that he had signed but that ANDREA MYLES had not mailed to pay Alvord & Alvord's various business creditors for the firm's normal operating expenses. Upon performing a more careful review of the firm's accounts, Mr. Alvord learned that many of the firm's debts to various creditors were long overdue. Mr. Alvord then confronted ANDREA MYLES about her conduct, and terminated her employment with Alvord & Alvord on or about December 2005.

Mr. Alvord later reported ANDREA MYLES's fraudulent activity to the Metropolitan Police Department ("MPD"). On or about May 2006, an MPD detective contacted ANDREA MYLES and informed her of the investigation against her. ANDREA MYLES retained an attorney to assist her in resolving the dispute with Mr. Alvord. On or about May 16, 2006, ANDREA MYLES' attorney sent an email to Mr. Alvord expressing her desire to resolve Mr. Alvord's complaint in a mutually acceptable manner. To that end, the attorney requested a meeting with Mr. Alvord. After Mr. Alvord declined to accept the invitation for a meeting with her attorney, ANDREA MYLES sent an email to Mr. Alvord on or about May 25, 2006, asking

Mr. Alvord to resolve the matter with her short of criminal prosecution by allowing her to make restitution.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By: _____
Perham Gorji
Assistant United States Attorney
Delaware Bar No. 3737
U.S. Attorney's Office
555 4th Street, N.W., Rm. 4233
Washington, D.C. 20530
(202) 353-8822

### DEFENDANT'S ACKNOWLEDGMENT

I have read and discussed the four (4) page Statement of Offense in the above-captioned case, 07-XXXX (xxx), with my attorney, Clark Fleckinger, Esquire. I agree, and acknowledge by my signature that this Statement of Offense is true and correct.

Date: 7/2/07

_____
Andrea Myles, a.k.a. Andrea Riley
Defendant

Date: 7/2/07

_____
Clark Fleckinger, Esq.
Attorney for Defendant