HONORABLE GLADYS KESSLER, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 1 0 2008
Clerk, U.S. District and Bankruptcy Courts

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: <u>07-CR-161</u> |
| | : | |
| vs. | : | SSN: _____ |
| | : | |
| MYLES, Andrea | : | Disclosure Date: <u>September 5, 2007</u> |

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____          _____
Prosecuting Attorney                                                Date

### For the Defendant

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____          _____
Defendant                    Date                      Defense Counsel         Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>September 19, 2007</u>, to U.S. Probation Officer <u>Kelly Kraemer-Soares</u>, telephone number <u>(202) 565-1353</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

FOR THE COURT

By:   Gennine A. Hagar, Chief
      United States Probation Officer

**CLARK U. FLECKINGER II**
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P C
ROCKVILLE METRO PLAZA I
51 MONROE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850
-----------
301-294-7301
FAX 301-738-5708

RECEIVED 2007 SEP 25 A 9: 10 U.S. PROB. DISTRICT

September 20, 2007

**VIA FACSIMILE (202) 273-0193 AND U.S. MAIL**

Kelly Kraemer-Soares
United States Probation Officer
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W., Suite 2800
Washington, D.C. 20001-2865

    Re:    ***U.S. v. Andrea Myles (AKA: Andrea Riley)***
            Criminal Case No.: CR-07-161-01 (GK)

Dear Ms. Kraemer-Soares:

    Please find herein the Defendant's Comments and Objections to the [draft] Presentence Investigation Report received on September 11, 2007, which was prepared in the above-referenced matter.

1. PSIR, Page 4, Paragraph 82: The Defendant's maiden, and current true, name is Andrea Riley. She married Richard Myles in February of 2004 and took his name. Upon her divorce from Myles in the latter part of 2005 she resumed her maiden name of Riley. At the time she commenced employment in 2002 with Alvord & Alvord, as well as when she was terminated from that employment, she was known as Andrea Riley rather than Andrea Myles.

2. PSIR, Page 5, Paragraph 11: Ms. Riley undertook no affirmative act to obtain the debit card in June of 2002. Rather a debit card was forwarded to her from Bank Of America, presumably for the reason that she was the person from Alvord & Alvord who was dealing with Bank of America personnel with regard to that account. Similarly, another debit card was forwarded in January of 2004 as the result of the card having been lost and Ms. Riley reporting that fact. Last, in September of 2005, a debit card was automatically forwarded by the Bank of America as a result of the then current debit card expiring shortly thereafter.

3. PSIR, Page 6, Paragraph 14: This paragraph references Ms Riley as having fraudulently obtained the debit cards previously referenced in Comments and Objections No. 2 above. Ms. Riley would incorporate those comments and objections to Paragraph 11 as part of Paragraph 14 as though fully set forth herein.

4. PSIR, Page 7, Paragraph 26: Mr. Riley objects to the 2 level upward adjustment for Abuse of Position of Trust or Use of Special Skill pursuant to USSG §3B1.3. That guideline section applies if the defendant abused a position of public or private trust or used special skill in a manner that significantly facilitated the commission or concealment of the offense. Application Note 1 provides that the definition of a "public or private trust" refers to a position of public or private trust characterized by *professional or managerial discretion* (emphasis added). The definition applies to *positions* which are occupied by persons who generally are accorded substantial discretion which is necessary to carry out to the various duties of the professional or managerial position and under circumstances where the exercise of such discretion is accorded considerable deference. The definition further provides examples of the kinds of positions to which this guideline does and does not apply. The guideline does apply to a lawyer, bank executive, or physician who abuses a client, the bank or it's investors, or a patient. Such persons are professionals and/or managers who act with little supervision and to whom substantial discretion is accorded in order to properly carry out the duties of those positions. However, as the Application Note indicates, this guideline does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the previously referenced factors which give rise to application of this guideline. A law firm bookkeeper/secretary under the supervision of an attorney and is, as a general proposition, without substantial discretion when carrying out his or her duties, and, accordingly, is substantially more akin to a bank teller than to a lawyer or other professional. Similarly, Application Note 4 would appear to make clear that a law firm bookkeeper/secretary does not possess the kind of "special skill" which would implicate this guideline. Pursuant to that Application Note, such a skill is not that kind of skill which is possessed by the general public. Rather, it is a skill acquired through substantial education, training or licensing. Examples of the kinds of skills referenced by this guideline are those skills possessed by pilots, lawyers, doctors, accountants, chemists and demolition experts. Ms. Riley submits that a bookkeeper/secretary clearly does not fall within that category of occupations.

5. PSIR, Page 8, Paragraph 31: For the reasons submitted in Comment and Objection No. 4 noted above, Ms. Riley objects to the Total Offense Level calculation of **18**. Rather, Ms. Riley submits that the Total Offense Level should be **16** inasmuch as USSG §3B1.3 should not be applied.

6. PSIR, Page 8, Paragraph 33: Ms. Riley would note that the failures to appear in the Prince George's County, Maryland District Court for the 2004 traffic offense charge was the result of her not having filed a change of address with the Maryland MVA and, accordingly, court date notices were forwarded to an old address and not received by her.

7. PSIR, Page 9, Paragraph 36: Ms. Riley advises that she has never been arrested for, or charged with, Indecent Exposure. Accordingly, attribution of the charge referenced therein is erroneous.

8. PSIR, Page 9, Paragraph 37: While Ms. Riley concedes that she advised that she has not been the subject of abuse or trauma, in fact, she has been the subject of abuse and trauma. When Ms. Riley was 15 years old, she was the victim of a non-consensual sexual encounter with a family member. She did not tell anyone of the aforesaid incident until she told a close friend a couple of years ago. In addition, during the course of her relationship with Richard Myles, (her husband from February of 2004 until their divorce in October 2005), she was the victim of domestic violence. She did not seek medical treatment nor did she seek court intervention.

9. PSIR, Page 10, Paragraph 43: Ms. Riley concedes that she advised that she believes that she may have a compulsive mental health disorder. Nevertheless, and as noted, she has never been diagnosed with such a disorder. Accordingly, and the time of the preparation of these Comments and Objections, she is in the process of exploring, from a forensic psychological standpoint, whether she suffers from any mental health disorder which may have been a contributing factor to her behavior resulting in the charges to which she has pled guilty in the instant matter. Similarly, although she advised that she suffers from depression, she has never been clinically diagnosed as having depression nor has she ever been treated for the same. It should also be noted that Dr. Barbara Kolz who is referenced in this paragraph was a referral from Ms. Riley's health insurance carrier. Dr. Kolz is not a forensic psychologist and has advised undersigned counsel that she is not competent to make a diagnosis as to whether Ms. Riley suffered from any mental health disorder which may have contributed to her behavior.

10. PSIR, Page 11, Paragraphs 49 and 50: The nature of the position that Ms. Riley holds with her current employer does not provide her with access to the cash or the financial accounts of her employer. Rather, the position, in essence, requires the Treasurer of her employer, to whom she is the administrative assistant, to collect and analyze financial data. Nevertheless, in order to ensure the Court that she does not present a risk to her current employer, Ms. Riley will attempt to obtain, and provide to the Court, a job description for her current position which corroborates the foregoing. And, to the extent that she is promoted or obtains another position with her current employer, she will attempt to obtain, and provide to the Court, a job description which will inform the Court of her then current employment duties in order to ensure that third parties are not being put at undue risk by virtue of Ms. Riley's employment. In addition, it is the understanding of Ms. Riley that she is subject to an annual review. The next, and her first, annual review is scheduled to occur in January 2008. To the extent that Ms. Riley is able to provide a copy of the document which memorializes her annual review, she will. Ms. Riley is further amenable to any other obligations which the Court believes will prevent undue third party risk.

11. PSIR Page 12, Paragraph 53: The assertion in this paragraph that Ms. Riley earned "$30,000 and $38,000" while she was employed at Alvord & Alvord from July 2000 through December 2005 is erroneous. Similarly, what Alvord &

Alvord reported to the Internal Revenue Service as to Ms. Riley's "earnings" appear to be erroneous. Ms. Riley admits that the $17,873.31 which Alvord & Alvord appears to have reported as Ms. Riley's earnings in, apparently, 2001, is accurate inasmuch as she worked there for only half of that year. In 2003, 2004, and 2005 her legitimate income is that as reflected on Page 5, Paragraph 12 of the PSIR. Alvord & Alvord appears to have reported to the IRS that her income for those years was $50,061, $59,000 and $108,001 respectively. Those figures may reflect what Alvord & Alvord have been able to determine what Ms. Riley received in those years as combined legitimate income and unauthorized income and/or benefits. Inasmuch as there appears to have been no reported (by Alvord & Alvord to the IRS) earnings of Ms. Riley in 2002, undersigned counsel would assume that the $49,733.76 or reported earnings is a reference to reported earnings for 2001. It is Ms. Riley's recollection that she earned an annual salary somewhere in the range of $36,000 to $38,000 in 2001 and slightly more in 2002 although it was during 2002 that she began inappropriately obtaining more than her legitimate salary.

12. PSIR, Page 12, Paragraph 55: Ms. Riley would submit that, in addition to the total assets referenced in this paragraph, she has $560 which she has escrowed with undersigned counsel for the purpose of payment toward her restitution obligation. She also submits that the $2,188.00 unsecured debt to the IRS referenced in this paragraph will increase significantly when she files income tax returns for 2001 through 2004.[1] In addition, this paragraph references Ms. Riley's apparent current monthly income and expenses. Her reported monthly income includes $480 that she receives from her daughters which, at the time of the preparation of these Comments and Objections, currently reside with her. However, within the next couple of weeks, Ms. Riley's eldest daughter who was providing her with $200 per month will move from Ms. Riley's residence and, accordingly, will no longer be providing the $200 per month that she has been providing. Thus, Ms. Riley's total monthly income should be reduced by that amount. Similarly, although Ms. Riley did represent that the monthly expenses reflected in this paragraph were accurate and complete, upon reflection she has realized that her reported monthly expenses were somewhat inaccurate. Moreover, there have been some changes in her circumstances which should also be reflected in this paragraph. First, Ms. Riley no longer has the $556 monthly car payment. In an attempt to lower her monthly expenses in order to pay restitution at an appropriate level, she turned her car over to the financial institution which financed the car.[2] Even after the finance company sells the car in order to reduce Ms Riley's indebtedness on the relevant note, Ms. Riley will still owe money on that note. She is currently attempting to negotiate a monthly payment on that obligation and has offered the finance company $100 per month toward the same. That offer has not been accepted at this time. Second, and related to the car/transportation issue just referenced, the monthly expenses do not include gas and maintenance. She advises that she is paying approximately $40 per week for gas. Thus, her monthly expense for gas alone is $175. Also, no utility expense was included in the monthly expenses listed.

---

[1] Ms. Riley has filed her 2005 and 2006 income tax returns.
[2] Ms. Riley's grandfather has given her his 1994 Oldsmobile Cutlass to use. Title has not been transferred. Car insurance is currently paid by her grandfather.

Although she advises that she has not yet been billed for such utilities at her new residence at the time of the preparation of this Comments and Objections, she anticipates that she will be paying approximately $150 per month toward those utilities. She has also been paying some money toward her infant granddaughter's medical expenses and other related expenses. That sum varies but, so far, has averaged approximately $100 a month. Third, although she advised that her food bill was approximately $150 per month, she now realizes that a more accurate, but still thrifty, figure for that expense is probably closer to $350 per month which would include toiletries, cleaning products and other items typically purchased on a periodic basis. Last, the itemization of monthly expenses does not include expenses such as hair care and various unexpected expenses which typically arise. Undersigned counsel would submit that allotting $75 per month toward such miscellaneous expenses is prudent and provides a more accurate picture of Ms. Riley's monthly expenses. Assuming that the foregoing income and expenses are added and/or subtracted, Ms. Riley's total monthly income is reduced to $3,124 and her current total monthly expenses are increased to $2470.[3] If such numbers are accurate, her current monthly net cash flow would change to $654.

13. PSIR, Page 13, Paragraph 58: Ms. Riley no longer has the car referenced in this paragraph. *See,* Comment and Objection No. 12 noted above.

14. PSIR, Page 14, Paragraph 65: For the reasons submitted in Comments and Objections Nos. 4 and 5 above, Ms. Riley submits that, based on a total offense level of **16,** the guideline range for imprisonment is 21 to 27 months.

15. PSIR, Page 14, Paragraph 66: As previously noted, and for the reasons submitted in Comments and Objections Nos. 4 and 5 above, Ms. Riley *objects* to a 2 level increase in the total offense level which is based upon an inapplicable application of USSG §3B1.3.

16. PSIR, Page 16, Paragraph 78: For the reasons submitted in Comments and Objections Nos. 4 and 5 above, Ms. Riley submits that, based on a total offense level of **16,** the guideline fine range is $5,000 to $50,000.

17. PSIR, Page 17, Paragraph 88: Ms. Riley would submit that the guideline sentence referenced above in Comment and Objection No. 14 to the PISR noted above is greater than necessary in order to effectuate the purposes of sentencing as referenced in 18 USC §3553(a)(2). Although Ms. Riley clearly recognizes the criminality and impropriety of her conduct for which she pled guilty on a preindictment basis, and believes that she clearly recognizes the impact upon her former employer, she submits that less confining alternatives to a guideline sentence of incarceration will more appropriately and effectively advance the various purposes of sentencing. Undersigned counsel will more fully advocate the reasons for the position just advanced in a sentencing memorandum which will be filed prior to the October 22, 2007 sentencing hearing. In any event,

---

[3] Ms. Riley's monthly expenses are likely to increase following the filing of 2001 through 2004 income tax returns.

undersigned counsel would submit, as a general proposition, that a sentence which is more lenient than a guideline range of incarceration is sufficient to promote the factors referenced in 18 USC §3553(a)(2) in the instant matter.

Thank you for your attention to the issues raised herein.

Very truly yours,

Clark U. Fleckinger II

CUF
cc:   AUSA Louis Ramos
       Andrea Riley